## UNITED STATES *v.* O'CONNOR.

*(District Court, E. D. Missouri, E. D.* June 3, 1887.)

1. ELECTIONS—FRAUDULENT REGISTRATION—INDICTMENT—SECTION 5512, REV. ST.
   The third clause of section 5512, Rev. St.. provides that "if at any registration of voters for an election for a representative or delegate in the congress of the United States any person knowingly personates and registers, or attempts to register, in the name of any person, whether living, dead, or fictitious, or fraudulently registers, or fraudulently attempts to register, not having a lawful right so to do, *or does any unlawful act to secure registration for himself, or any other person,* * * * every such person shall be punished as prescribed in the preceding section." *Held,* on demurrer to an indictment under this section. that where a count charged, in effect, that, in order to secure registration for one B., defendant wrote the name of said B. in the registration book, it would be inferred that said B. was a real and not a fictitious person.

2. SAME—SECTION 5512, REV. ST.—"UNLAWFUL ACT"—SESS. LAWS MO. 1883, PAGE 38.
   In an indictment under this section, the only unlawful act charged to have been committed by the defendant consisted in writing the names of various persons in the registration book while the same was in use for the purpose

of registration by the recorder of voters for the Tenth ward of the city of St. Louis, Missouri. *Held,* that said act was "unlawful," within the meaning of the statute, when impliedly prohibited by a statute of Missouri, (Sess. Laws, 1883, p. 38,) which created a system of registration for the city of St. Louis.

Demurrer to Indictment under Rev. St. U. S. § 5512, for Fraudulent Registration.

*James O. Broadhead, D. P. Dyer,* and *Thomas P. Bashaw,* for the United States.

*Krum & Jonas,* for defendant.

THAYER, J. This is an indictment under the third clause of section 5512 of the Revised Statutes of the United States, which reads as follows:

"If at any registration of voters for an election for a representative or delegate in the congress of the United States any person knowingly personates and registers, or attempts to register, in the name of any person, whether living, dead, or fictitious, or fraudulently registers, or fraudulently attempts to register, not having a lawful right so to do, *or does any unlawful act to secure registration for himself, or any other person,* * * * every such person shall be punished as prescribed in the preceding section."

The first count of the indictment charges, in substance, that at a registration for a congressional election, to be held in the Ninth congressional district of the state of Missouri in November, 1886, the defendant, in order to secure registration for one Victor Balm as a voter at said congressional election, did unlawfully and falsely write on the registration book then being used by the duly appointed and qualified recorder of voters of the Tenth ward of the city of St. Louis, within said congressional district, the name of said Victor Balm, whereby it was made to appear on said registration book that said Victor Balm had applied to said recorder of voters for registration, and had taken the oath required of persons seeking registration; whereas, in truth and in fact, he had neither applied for registration, or taken the oath in that behalf required, as the said defendant well knew. There are 21 counts of like tenor to the foregoing, wherein the defendant is accused of unlawfully and falsely writing the names of as many different persons on the registration book for the purpose of securing registration for such persons.

1. One objection made to the indictment is that it does not show, by any proper averment, that the persons mentioned in the various counts of the indictment for whom registration was sought *were actual persons.* It appears to the court that this objection to the indictment is without merit. The count charges, in effect, that, in order to secure registration for one Victor Balm, the defendant wrote the name of said Victor Balm in the registration book. The necessary inference from such language is that Victor Balm, whose name was so written, was a real and not a fictitious person, and that the unlawful act complained of was committed to secure to said Balm (he being an actual person) an opportunity to vote, although he had not duly registered as the law requires. The same remark will apply to all the other counts. If the names embraced

in the various counts are not names of real persons, but are fictitious names, and the same were written on the registration book to give persons not named in the indictment an opportunity to vote under such fictitious names, then the pleader has not correctly stated his case, and proof of such facts would not support the indictment, inasmuch as the indictment avers that the act was committed with a different intent; that is to say, to secure registration for actual persons whose names are therein mentioned.

2. The next objection to the indictment is more important, and involves a question of some difficulty. The only unlawful act charged to have been committed by the defendant consisted in writing the names of various persons in the registration book while the same was in use for the purpose of registration by the recorder of voters for the Tenth ward of the city of St. Louis, Missouri. It is insisted that the mere writing of the names of certain persons in the registration book, under the circumstances alleged, is not an unlawful act, that the act in question is neither *malum in se* nor *malum prohibitum*, nor such an act as would enable any person to maintain a civil action for the doing of the same; and consequently that it cannot be regarded as unlawful. It may be conceded that an act is not unlawful unless it falls within one of the three classes last mentioned, and inasmuch as it is not claimed that the acts described in the various counts of the indictment are *malum in se*, or that any individual could maintain a civil suit in consequence thereof, the point to be determined is practically whether such acts have been prohibited by statute.

At the beginning of the inquiry it may be further conceded that no statute of this state, or of the United States, in so many words, forbids the writing of names in the registration book in the manner charged to have been done by the defendant, or imposes a penalty for so doing. The fact, however, that no penalty has been imposed is unimportant, if the act in question has been in effect prohibited; as an act which is prohibited by law is none the less unlawful, although no penalty is denounced. After a careful consideration of the matter, it is my opinion that such acts as are described in the various counts of the indictment have been in effect prohibited by the statute creating a system of registration for the city of St. Louis, Missouri. *Vide* Sess. Laws Mo. 1883, p. 38.

To bring a given act within the inhibition of a statute, and render the same unlawful, it is not always essential that it should be particularly described, and expressly prohibited. If such was the case, laws would either become too prolix, or fail in a great measure to accomplish the intent of the law-maker. A statute often speaks as plainly by inference, and by means of the purpose which underlies the enactment, as in any other manner, and whenever it appears by necessary inference from what is expressed, that a given act or acts are opposed to the policy of the law, and will defeat its purpose, or the object had in view by the legislature, such acts should be held to be thereby prohibited. Furthermore, when a statute directs that a thing shall be done in a given manner, it ordi-

narily excludes all other modes of doing it; and, according to that rule of interpretation, when a statute directs that a public record shall be kept for a certain purpose, and that entries shall be made therein in a certain way, it seems obvious that it is unlawful to make entries in such record in any manner other than has been prescribed.

Now, the statute which was before alluded to makes it the duty of the recorder of voters to provide a suitable registration book for each election precinct in the city of St. Louis. Such books have been held to be public records. *State* v. *Hoblitzelle*, 85 Mo. 620. They contain the only authentic evidence of the persons entitled to exercise the elective franchise within the various voting precincts of the city. They are required to be kept in the custody of public officers, to-wit, the recorder of voters and his deputies, and penalties are denounced for defacing or mutilating the same, and for permitting the same to pass out of such custody. Persons desiring to be registered are required to go in person before the recorder of voters, or before the deputy-recorder of the ward where the applicant resides, and take the oath that they have not registered elsewhere; that they have given their true names and place of residence; and, until such oath has been taken, the recorder of voters is not authorized to enter the applicant's name on the registration book, or allow it to be so entered.

Furthermore, it is declared to be a felony if any person willfully or illegally procures his name to be placed on the registration book without being entitled to have it placed there; and the first step in that direction is to take the oath above-mentioned, which, of course, involves a personal appearance of the voter before the registration officer. Taken together, the foregoing statutory provisions necessarily exclude the idea that names of persons may be lawfully written in a registration book in any other manner than that prescribed by the statute. It would be a strange result if an individual other than the registration officer might, without violating the law, write the names of divers and sundry persons in the registration book who had neither appeared before the officer or taken the oath, after the legislature has given such careful directions as to the manner in which the names of voters shall be entered therein; and more especially would such an inference seem to be erroneous, bearing in mind the fact that such books are public records, and the uses for which they are designed. I accordingly conclude that the indictment in its various counts charges the defendant with the commission of acts which were clearly unlawful.

3. It is furthermore suggested that the unlawful act referred to in section 5512, Rev. St. U. S., must be some act which is unlawful, under the laws of the United States; and also that the indictment states no offense, because the mere writing of names on the registration book has no tendency to secure registration for the persons whose names are so written. The first of these objections is answered by the case of *Ex parte Siebold*, 100 U. S. 371, in which it was held that congress has power to impose penalties for violating state election laws in case of an election held pursuant to such laws for the election of representatives in congress;

and in point of fact many of the penalties imposed by sections 5511, 5512, Rev. St. U. S., *are* for violation of state election laws, or, at least, the offenses therein described must be determined by reference to local election laws. With respect to the second objection, it is sufficient to say that the writing of a person's name on a registration book has, in my opinion, a marked tendency to secure registration for such person or persons. It is true that the fraud may be discovered by the registration officer or the board of revision, if great diligence is exercised, but the tendency of the act to secure a registration for the person whose name is so written that will be effectual on election day cannot be denied.

My conclusion is that the demurrer to the indictment is not well taken, and that the same should be overruled.