UNITED STATES ex rel. CHAMPION v. AMES.

(Circuit Court, N. D. Illinois. March 31, 1899.)

1. HABEAS CORPUS—QUESTIONS ARISING ON HEARING—CONSTITUTIONALITY OF ACT OF CONGRESS.

A circuit court of the United States, on the hearing upon writ of habeas corpus, will not hold an act of congress unconstitutional.

2. LOTTERIES—CARRYING TICKETS FROM ONE STATE TO ANOTHER—CONSTRUCTION OF STATUTE.

In Act March 2, 1895 (28 Stat. 963), which makes it an offense to cause lottery tickets to be carried or transferred "from one state to another," the word "state" must be held to have been used in a constitutional sense, which does not include a territory of the United States; hence a complaint charging a person with having caused lottery tickets to be carried and transported from a state to a territory does not charge an offense within a statute.

Hearing on a Writ of Habeas Corpus.

Joseph B. David, for petitioner.
S. H. Bethea, for defendant.

JENKINS, Circuit Judge (orally). Upon the petition of C. F. Champion, a writ of habeas corpus was issued to the marshal of the Northern district of Illinois to bring up the body of the petitioner, then in his custody, that the court might inquire into the cause of arrest and imprisonment. Upon return to the writ, it appears that a certified copy of a complaint, made to a commissioner in the Northern district of Texas, was filed with a United States commissioner in this district, who thereupon issued a warrant for the arrest of the petitioner. That complaint charged Champion with conspiracy, with certain other parties named, to commit an offense against the United States, the overt act alleged being the transportation of certain lottery tickets in the Pan-American Lottery Company of Paraguay. The petitioner, having been arrested upon that complaint, was brought before the commissioner; whereupon an amended complaint was filed with the commissioner, made by Mr. Richard Hudson. That amended complaint abandoned the theory of conspiracy, and charged that Champion, on the 15th of February, 1899, at Dallas, in the Northern district of Texas, did cause to be carried and transported by the Wells-Fargo Express Company, from the state of Texas to the territory of New Mexico, divers tickets of a drawing in, and advertisement of, a lottery. An examination was had upon that complaint, and the prisoner was committed to be transferred to Texas to meet the charge. Upon the hearing of this petition, a number of questions have been raised touching the proceedings before the commissioner, including the constitutionality of the act of congress by which this offense was created. In the disposition of the matter, I find it necessary to refer to but two of the questions presented.

I shall not undertake to say to what extent a court, upon the hearing on a writ of habeas corpus, may go into the evidence before the commissioner, but, as I announced upon the hearing, if there is a sufficient charge here,—if there is an offense set forth within the act of congress,—I am satisfied that there was shown probable cause to believe that such offense was committed by the petitioner. In considering the constitutionality of this act of congress, I have read the opinion in the case cited (France v. U. S., 164 U. S. 676, 17 Sup. Ct. 219), in which the supreme court declined to pass upon its constitutionality. I have carefully considered the matter, and I think it fairly a debatable and doubtful question whether the act will be held to be constitutional. But, it being doubtful, it is not for this court, upon the hearing of a petition upon a writ of habeas corpus, to hold the law unconstitutional. I conceive it to be the duty of a subordinate court, when an act of congress is of doubtful validity, to hold the law valid for the purposes of the case, leaving the question of the constitutionality to be dealt with by the ultimate tribunal. Therefore, for the purposes of this hearing, I shall hold the act of congress to be constitutional.

This act (28 Stat. 963) provides:

"That any person who shall cause to be brought within the United States from abroad for the purpose of disposing of the same, or deposited in or carried by the mails of the United States, or carried from one state to another in the United States, any paper, certificate or instrument, purporting to be or

represent a ticket, chance, share or interest in or dependent upon the event of a lottery, so-called gift concert, or similar enterprise offering prizes dependent upon lot or chance, or shall cause any advertisement of such lottery, so-called gift concert, or similar enterprise offering prizes dependent upon lot or chance, to be brought into the United States, or deposited in or carried by the mails of the United States, or transferred from one state to another, shall be punishable in the first offense by imprisonment," etc.

It will be perceived that the offense declared here is the causing to be carried these lottery tickets by any means of transportation from one state to any other in the United States. It is claimed that lottery tickets—lotteries being generally prohibited by the laws of the various states—cannot constitute "commerce," as it is known and as the term is employed in the constitution of the United States. I am not prepared to say that that contention is well founded, for a prohibited thing may yet be a matter of commerce, and it may be that in the regulation of commerce between the states, under the power conferred by the constitution, congress has the right to exclude that which it deems prejudicial to public morals, especially when commerce in such matters is already prohibited by the law of the states.

The serious difficulty which I have encountered, so far as it is my duty to pass upon the questions presented here, arises upon the complaint itself. I take it that upon the hearing of this petition the court has the undoubted right to look into the complaint, at least so far as to ascertain if an offense is charged; for, if none is charged, the commissioner has no jurisdiction to issue his warrant or to proceed with the matter. The complaint charges that the defendant caused to be carried and transferred by the Wells-Fargo Express Company, from the state of Texas to the territory of New Mexico, certain lottery tickets. The act designates the offense to be the carrying or transferring of such matter from one state to another in the United States. The question to be decided, therefore, is in what sense the word "state" is employed in the act in question. Does it include a territory of the United States?

At a very early day the question came before the supreme court of the United States (Hepburn v. Ellzey, 2 Cranch, 445), in regard to the jurisdiction of the federal courts; the act conferring jurisdiction providing that in order to confer jurisdiction upon the federal court, there must be a controversy between a citizen of one state and a citizen of another state, or between an alien and a citizen. The question arose whether an inhabitant of a territory of the United States, who was a citizen of the United States, could maintain a suit in the federal court, and upon that question we have the decision of the supreme court, speaking by Mr. Chief Justice Marshall, than whom no greater intellect ever adorned the bench of the supreme court of the United States. This decision was made in what might be termed the "formative period" in the construction of the constitution, at a time when many of its framers were living, and it might be termed a "contemporaneous construction" of the constitution. I have also read with great interest and care the several decisions of the district court of Oregon to which the court here was referred upon the hearing, and the reasoning of those cases has greatly im-

pressed me; for there can be no sort of reason why a citizen of the United States who happens to be an inhabitant of a territory should not be allowed access to the federal courts of his country when an alien has that right, and it has seemed to me that the statute should have been so construed that the word "state" should apply to a territory of the United States which is under its government and subject to its laws. But the same argument and the same reasoning which induced Judge Deady to hold that the word "state" includes "territory" was presented to, and passed upon by, the supreme court at that early date in the construction of the constitution, and the chief justice remarked: "The act of congress obviously used the word 'state' in reference to the term as used in the constitution;" and therefore it becomes necessary to ascertain in what sense the word is employed in the constitution, and "the result of that examination is a conviction that the members of the American Confederacy only are the states contemplated in the constitution. The house of representatives is to be composed of members chosen by the people of the several states, and each state shall have at least one representative. The senate of the United States shall be composed of two senators from each state. Each state shall appoint, for the election of an executive, a number of electors equal to its whole number of senators and representatives. Those clauses show," says the chief justice, "that the word 'state' is used in the constitution as designating a member of the Union, and excludes from the term the signification attached to it by writers on the laws of nations." It was claimed before that court that other passages from the constitution showed that the term "state" was used in a more enlarged sense, but the court observed, on examining the passages quoted, that they did not prove what was attempted to be shown by them. "It is extraordinary," says the chief justice, "that the courts of the United States, which are open to aliens, and to the citizens of every state in the Union, should be closed upon them" when they are citizens and inhabitants of a territory. "But this is a subject for legislative, not for judicial, consideration."

I feel bound by the decision of the supreme court to which I have referred, and which has been upheld and adhered to continuously from that time to the present. Hooe v. Jamieson, 166 U. S. 395, 17 Sup. Ct. 596. It is the law of the land to-day, with respect to the jurisdiction of the federal courts, that the inhabitants of a territory cannot seek justice within the portals of a federal court.

Here is an act creating an offense unknown to the common law. It is a cardinal canon in the construction of criminal statutes that they should be construed strictly; that the courts have no right to extend their meaning beyond the scope of the terms employed; and we must seek for the intent of the lawmaking power in the language which has been used in the act itself. When congress, knowing, as we must presume it did, that the word "state," as used in the constitution, means simply state, and not territory, and knowing, also, that the act, if it could be upheld at all, could only be sustained under the power given to congress to regulate commerce between the states, employed that term, we must assume that it was in the con-

stitutional sense, as interpreted and declared by the supreme court of the United States.

It may be said—it may occur to any one to say—that the transportation of lottery tickets into a territory which was under the absolute control of congress was as much within the mischief intended to be prevented as the transportation of such tickets from one state to another; but it is no more true than was the powerful argument presented to the supreme court that it was not intended to prohibit to citizens of the United States, because they happened to be domiciled in a territory, the protection of the courts of the United States, and it was as easy a matter in the one case as in the other, as suggested by the chief justice, to apply the remedy. If congress desired to prohibit the transportation of lottery tickets into a territory of the United States, it should have said so. We may not enlarge the scope of a criminal statute to declare an offense which congress has not created, because we see that the mischief is the like mischief that congress has sought to prevent in respect to other geographical divisions of the Union. I have come reluctantly to the conclusion that it would be judicial legislation for the court to hold, in view of the decisions of the supreme court, that the word "state," as used in this act, includes the territories of the United States. It follows, therefore, that this complaint presented to the commissioner charges no offense against this petitioner, and that he must be discharged from imprisonment.