### UNITED STATES v. WHELPLEY et al.

### (District Court, W. D. Virginia. November 7, 1903.)

**1. CRIMINAL LAW—LOTTERIES—TRANSPORTATION OF TICKETS—STATUTES—CONSTRUCTION.**

Act March 2, 1895, c. 191, 28 Stat. 963 [U. S. Comp. St. 1901, p. 3178], provides that any person who shall cause to be brought within the United States from abroad, for the purpose of disposing of the same, or carry from one state to another in the United States, any ticket of a lottery, shall be punished, etc. *Held*, that such statute did not prohibit the transportation of lottery tickets from a state to the municipality of the District of Columbia.

**2. SAME.**

Such section did not prohibit the transportation of lottery tickets from one state "through" another state or states, where the ultimate destination of the shipment was not within one of the United States.

Thos. L. Moore, U. S. Atty.

J. B. Stephenson, for defendants.

McDOWELL, District Judge. The defendants have been indicted for a violation of the act of March 2, 1895, c. 191, 28 Stat. 963 [U. S. Comp. St. 1901, p. 3178], in relation to the suppression of the lottery traffic. The first count of the indictment charges that the defendants shipped by express certain lottery tickets from Dayton, Va., to West Virginia, for the purpose of disposing of the same. The second count charges that the defendants shipped by express lottery tickets from Dayton, Va., through West Virginia, to Maryland, for the purpose of disposing of the same. The third count charges that the shipment was from Dayton, Va., to the District of Columbia, for the purpose of disposing of the same. The defendants demur to the third count, on the ground that a shipment to the District of Columbia is not prohibited by the statute.

The act, so far as now material, reads:

"That any person who shall cause to be brought within the United States from abroad, for the purpose of disposing of the same, or deposited in or carried by the mails of the United States; or carried from one state to another in the United States, any * * * ticket * * * of a lottery * * * shall be punishable * * *."

The point made is that the language, "carried from one state to another in the United States," does not include the District of Columbia. This is a highly penal statute, which makes a crime of an act which was formerly not a crime. Such a statute, subject to the rule that "a statute is never to be construed against the plain and obvious dictates of reason," should be strictly construed. See France v. U. S., 164 U. S. 682, 683, 17 Sup. Ct. 219, 41 L. Ed. 595; Justice Harlan's dissenting opinion in Francis v. U. S., 188 U. S. 381, 23 Sup. Ct. 334, 47 L. Ed. 508; U. S. v. Ames (C. C.) 95 Fed. 453. If the intent was to prohibit shipments of lottery tickets from a state to the District of Columbia, such intent can be arrived at only by construing the word "state" as including the municipality of the District of Columbia. Assuming the constitutionality of the statute thus construed, I find no certain indication in the act that Congress intended

that it should thus be construed. And certainly, when a criminal statute is in question, the proper course is to solve a substantial doubt as to the meaning of the statute against, rather than for, the government. If such construction be wrong, Congress can readily prevent a repetition of the error by making clearer its meaning by an amendment. So far as I am able to say, Congress may have intentionally omitted an expression to the effect that the word "state," where used in this statute, shall embrace the territories and the District of Columbia. Assuming the power of Congress to forbid shipments of lottery tickets (such being "commerce"—Lottery Case, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492) from the District of Columbia to a state or territory, or from any territory to a state or another territory, or to the District of Columbia, yet when the inhibition is against a shipment made from a state to a territory or to the District of Columbia there might seem to some minds to be reason to doubt the power of Congress.

"Congress shall have power * * * to regulate commerce with foreign nations, and among the several states, and with the Indian Tribes." Thus reads section 8, art. 1, Const. If Chief Justice Marshall's ruling in Hepburn v. Ellzey, 2 Cranch, 445, 2 L. Ed. 332, is to be the guide in construing the meaning of the word "state" as found in the Constitution, it may seem difficult to find in the commerce clause authority to forbid shipments from any state to a territory or to the District of Columbia. I am not myself expressing an opinion on the constitutionality of an act of Congress regulating commerce from a state to the District of Columbia. I am inclined to think that the implication from the decision in Stoutenburgh v. Hennick, 129 U. S. 141, 9 Sup. Ct. 256, 32 L. Ed. 637, and the language of Mr. Justice Holmes in Hanley v. Kansas City Southern R. Co., 187 U. S. 619, 23 Sup. Ct. 214, 47 L. Ed. 333, are sufficient to prevent a subordinate federal court from holding such an enactment invalid, even if so inclined. I am, however, arguing that Congress, or some of its members, may have doubted the power of Congress to forbid shipments of lottery tickets from a state to a territory or to the District of Columbia. It was said in the dissenting opinion of Mr. Justice Miller in Stoutenburgh v. Hennick, supra: "Commerce by a citizen of one state, in order to come within the constitutional provision, must be commerce with a citizen of another state; and where one of the parties is a citizen of a territory, or of the District of Columbia, * * * it is not commerce among the citizens of the several states."

In the opinion of the court by Mr. Justice Miller in the Trade-Mark Cases, 100 U. S. 96, 25 L. Ed. 550, we find this:

"When, therefore, Congress undertakes to enact a law, which can only be valid as a regulation of commerce, it is reasonable to expect to find on the face of the law, or from its essential nature, that it is a regulation of commerce with foreign nations, or among the several states, or with the Indian tribes. If not so limited, it is in excess of the power of Congress."

It may be safely asserted that at every session of Congress there are some members who are "strict constructionists." And it is at least possible that, because of some doubt on the part of at least

some of its members as to its power to so legislate, Congress intentionally omitted to include shipments of lottery tickets from states to a territory or the District of Columbia. If there be the slightest force in this suggestion, it affords an additional reason for refusing to read into the statute in question an inhibition which is not unmistakably expressed, and is not necessarily or clearly implied from what is expressed.

It is true that in the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) Congress has undertaken to regulate commerce from any state to any territory or to the District of Columbia. And I do not at present recall that the validity of this feature of the act has ever been assailed. But this does not entirely answer the suggestion. The Forty-Ninth Congress, which enacted the interstate commerce act, and the Fifty-Third Congress, which enacted the anti-lottery act, were composed to a considerable extent of different individuals. The committees which reported these two bills may have been, and doubtless were, differently constituted. The views of the strict constructionists may have been given more weight in 1895 than in 1887. I have not undertaken to examine the history of the enactment of the act of 1895, if there be such available, as I have not the time for such examination, and as such examination would probably be fruitless, or at least quite inconclusive.

I have considered the effect of the statutes which by the second section of anti-lottery act are made to "apply in support, aid, and furtherance of the enforcement of this act," but I find nothing in them which seems to bear on the question under consideration. I am of opinion to sustain the demurrer to the third count.

Counsel requested that, in the event the above conclusion was reached, I express my opinion on another point. It is agreed that the facts in this case are that the defendants made one shipment by express of lottery tickets from Dayton, Va., to some person in the city of Washington. This package passed through West Virginia and Maryland en route to Washington, and it is solely on this fact that the counts alleging shipments to West Virginia and to Maryland are based. The intention of the United States attorney is to dismiss this prosecution if my opinion on this question is also against the government.

Congress has not expressed an intent to inhibit shipments of lottery tickets through any state. As to shipments through a state destined for a foreign country Congress doubtless had no intent to legislate. There was no necessity to inhibit a shipment from a state through another state if destined for still another state. To forbid shipments from any state to another state (meaning by the latter the state of the ultimate destination of the shipment) was sufficient. Shipments from a state to the District of Columbia, through some state other than that from which the shipment started, may possibly have been, as hereinabove suggested, intentionally omitted from the inhibitions of the act.

It is true that under the facts in this case there was literally a carriage from Virginia to West Virginia, in that the package passed

from the one state into the other. But I am of opinion that Congress had in mind the place of shipment and the place of ultimate destination only, and did not intend to forbid a mere carriage through a state.

Moreover, I am inclined to think that the words, "for the purpose of disposing of the same," are properly to be considered as governing the inhibition against causing lottery tickets to be carried from a state to another. The indictment is drawn on this theory; but the government now takes the position that such allegation is unnecessary and mere surplusage. The statute is rather badly expressed, but the act of carrying lottery tickets to a state for any other purpose than to dispose of them is a rather harmless act to be the subject of congressional action; and the shipment might be made for a legitimate purpose, for instance by a government agent for the purpose of using the tickets as evidence. While it may be within the powers of Congress to forbid interstate shipments of lottery tickets through any state, even when their ultimate destination, and the place where they are to be disposed of, is a territory or the District of Columbia, yet I cannot think that such was the intent of this statute. If a shipment were made from New Jersey, through New York, to Canada, it seems very clear that the statute in question would not support an indictment for making such shipment. And unless we can say with certainty that the word "state" in this statute was intended to include the territories and the District of Columbia we have no more warrant for holding that there is any expressed or clearly implied intent to forbid shipments from one state through another state to a territory or to the District of Columbia than for holding that a shipment from New Jersey to Canada is prohibited.

While the word "state" has sometimes been construed to include the territories and the District of Columbia (Talbott v. Silver Bow County, 139 U. S. 444, 11 Sup. Ct. 594, 35 L. Ed. 210; Metropolitan Railroad v. District of Columbia, 132 U. S. 9, 10 Sup. Ct. 19, 33 L. Ed. 231; Geofroy v. Riggs, 133 U. S. 268, 10 Sup. Ct. 295, 33 L. Ed. 642), still Congress surely may be assumed to have known that the word "state" had often been held not to include the territories or the District of Columbia; and if we give that body, which always numbers many able members of the legal profession among its members, credit for such knowledge, we cannot say with certainty that it intended the word "state" to mean territory or District of Columbia.