# THE UNITED STATES OF AMERICA
## *v.*
# ROGELIO S. CASTRO.

---

San Juan, Criminal, No. 373.

1. The act of Congress of March 2, 1895 (28 Stat. at L. 963, chap. 191, U. S. Comp. Stat. 1901, p. 3178), is applicable to Porto Rico.
2. It is a violation of said act to import lottery tickets from Cuba into Porto Rico for the purposes forbidden by the act.
3. In construing penal statutes the courts will endeavor to ascertain and apply the legislative intent.

Opinion filed May 10, 1907.

---

*J. R. F. Savage, Esq.,* district attorney for United States.

*T. D. Mott, Jr., Esq.,* attorney for defendant.

Rodey, Judge, delivered the following opinion:

The defendant is charged with the violation of the act of Congress of March 2, 1895 (28 Stat. at L. 963, chap. 191, U. S. Comp. Stat. 1901, p. 3178), the material portion of which reads as follows:

"That any person who shall cause to be brought within the United States from abroad, for the purpose of disposing of the

United States v. Castro.

same, or deposited in or carried by the mails of the United States, or carried from one state to another in the United States, any paper, certificate, or instrument purporting to be or represent a ticket, chance, share, or interest in, or dependent upon the event of, a lottery, so-called gift concert, or similar enterprise offering prizes dependent upon lot or chance, . . . shall be punishable in the first offense by imprisonment for not more than two years or by a fine of not more than one thousand dollars, or both, and in the second and after offenses by such imprisonment only."

Section 2 of this same act provides that the provisions of §§ 3929, 4041 (U. S. Comp. Stat. 1901, pp. 2686, 2749), and §§ 2491, 2492, and §§ 11–13 of the act of October 1st, 1890, and an "Act to Reduce the Revenue and Equalize Duties on Imports, and for Other Purposes," and other provisions of law for the suppression of traffic in or circulation of any such tickets, chances, shares, or interests in all other matters relating to lotteries, or for the suppression of traffic in or circulation of obscene books, or articles of any kind, shall apply in support, aid, and furtherance of the enforcement of this act.

The charging part of the indictment, following the statute, charges that the defendant "did unlawfully and knowingly cause to be brought into the United States from abroad, to wit, within the district of Porto Rico, from the island of Cuba, certain papers, certificates, or instruments purporting to be and representing shares in, and dependent upon the event of, a certain lottery offering prizes dependent on lot or chance, to wit, in the Banco Industrial de Santiago, as he, the said Rogelio S. Castro, then and there well knew, etc."

To this indictment the defendant has interposed a general demurrer, setting out that the indictment does not set forth facts

that constitute a crime by the common law, or under any statute of the United States. An oral hearing was had, wherein counsel for defendant and the United States attorney for the district of Porto Rico made arguments fully covering the ground of the respective sides of the issue.

An examination of the question makes it manifest that if this indictment stands it must be because of the opening words of the statute under which it is drawn; that is, "that any person who shall cause to be brought within the United States from abroad, for the purpose of disposing of the same,"—as it is clear that the remainder of the section is inapplicable.

Counsel for defendant insists, and, generally speaking, we agree with the contention, that because the statute is a highly penal one, which makes a crime of an act which was formerly not a crime, it should be strictly construed; but we will later take occasion to point out that this does not necessarily mean that the rule should be carried so far as to defeat the manifest purpose of the legislature. In support of his position defendant's counsel calls attention to the cases of United States ex rel. Champion v. Ames, 95 Fed. 453; United States v. Whelpley, 125 Fed. 616; France v. United States, 164 U. S. 682, 41 L. ed. 597, 17 Sup. Ct. Rep. 219, and to the dissenting opinion of Mr. Justice Harlan in Francis v. United States, 188 U. S. 381, 47 L. ed. 512, 23 Sup. Ct. Rep. 334.

In the Ames Case, Judge Jenkins, of the circuit court for the northern district of Illinois, in 1899, as to that portion of the act we are now considering, with reference to the prohibition against carrying or transferring lottery tickets "from one state to another," squarely decided that the word "state" must be held to have been used in a constitutional sense, and that it does not include a territory of the United States; that, conse-

III. PORTO RICO—4.

quently, the indictment in that case, which charged the trans-
portation of lottery tickets from Texas into the territory of New
Mexico, did not charge an offense denounced by the statute.
Judge McDowell, of the western district of Virginia, in 1903,
in the Whelpley Case, supra, held that the portion of the act of
Congress referred to did not prohibit the transportation of lot-
tery tickets from a state to the District of Columbia. The other
cases cited go to the constitutionality of the act, as a whole, and,.
as that has been settled by the Supreme Court of the United
States, it is not necessary for us to consider that phase of it. The
judges in the former cases support their reasoning by reference
to well-known fundamental principles as to the construction of
penal statutes, and cite a line of authorities that are rather
familiar to those who have had occasion to examine the decisions
of the courts regarding the status of territories of the United
States under national authority. We think it unnecessary at
this time to express any opinion as to these two decisions, even
though we might be disposed to criticize them; because the case
here, as we see it, must rest on another portion of the act; that
is, the offense, if any, is that the defendant brought the tickets
"within the United States from abroad, for the purpose of
disposing of the same." This is the crux of the matter,—the
very gist of the offense. Does it constitute a crime under the
statute? It does not need argument to support the statement
that bringing such tickets from Cuba into one of the states of
the Union would, under this act, be bringing from abroad, and
hence a crime; but counsel for defendant insists that the bring-
ing of the tickets into Porto Rico from Cuba is not a bringing
of the same into the United States.

The statute we are discussing was enacted about twelve years
ago, yet no case has been called to our attention, nor have we

been able to find any, where the courts have passed upon the exact question that now presents itself.

We might dispose of the matter with the statement that it is perhaps *stare decisis* here, as we find from our files that former incumbents of this bench have passed upon the identical question; but, as we have stated in other cases, it is not always well to consider matters as finally settled when the judges deciding them have not filed written opinions, and vested rights in the broad sense have not become established by reason of the former decisions; and especially is this so in the present instance, as it happens that our views coincide with the ruling made in the cases referred to, so no ill can come from a further discussion of the matter. We find that in the case of the United States v. Santamaría, Criminal, No. 265 on the docket of this court, the defendant was charged with the violation of this same statute, and a motion was made to quash the indictment upon several grounds, among them being the very ground set up in the demurrer in the present case. The motion was granted, but the reason for this action of the court was not the one now being urged here. Yet it is manifest, as the defendant was not discharged, but held for further action and reindicted, that the point now being made did not avail. Several other cases were in like manner decided in favor of the government, and they were all transgressions under this same statute,—the facts in each, as appears from the record, being practically the same as in this one. They are severally entitled, United States v. Caubet, Criminal, No. 525; United States v. Carprowitt, Criminal, No. 333; and United States v. Hunt, Criminal, No. 335.

We find, on examining the question, that statutes containing similar expressions to the portion of the statute we are here considering have been held to apply to Porto Rico. In that regard

United States v. Castro.

we adopt as our opinion a portion of the well-written brief of the United States attorney, as follows:

"The case of the United States v. Amado, wherein the defendant was charged with a violation of § 3082 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 2014), was tried in this court at the April, 1902, term, and defendant was found guilty. Thereupon his counsel moved in arrest of judgment, alleging that the indictment did not set forth an offense under the statutes of the United States. See page 3, transcripts of record to the Supreme Court of the United States, cases from the district court of the United States for Porto Rico, 1904. The section of the Revised Statutes referred to provides: 'If any person shall fraudulently or knowingly import or bring into the United States any merchandise contrary to law, . . . etc.'

"The motion in arrest of judgment was overruled, and the defendant appealed to the Supreme Court of the United States, where it was dismissed for lack of jurisdiction; but the court, after reciting the section above quoted, and §§ 2 and 14 of the act of April 12, 1900 (31 Stat. at L. 77, 80, chap. 191), whereby, among other things, the statutory laws of the United States, not locally inapplicable, were applied to Porto Rico, states that the section under which the indictment was laid was in force in Porto Rico. Amado v. United States, 195 U. S. 172, 173, 49 L. ed. 145, 146, 25 Sup. Ct. Rep. 13.

"The Supreme Court of the United States has also held that the immigration laws, which provide, among other things, 'that upon arrival by water at any place within the United States of any alien immigrants, etc.,' were extended to Porto Rico by § 14 of the act of April 12, 1900, above cited. Gonzales v. Williams, 192 U. S. 1, 8, 13, 48 L. ed. 317, 319, 321, 24 Sup. Ct. Rep. 177; 24 Ops. Atty. Gen. 86.

"As to the effect of the treaty of Paris upon the custom duties collected on imports into the United States from Porto Rico prior to the act of April 12, 1900, see De Lima v. Bidwell, 182 U. S. 1, 45 L. ed. 1041, 21 Sup. Ct. Rep. 743.

"As to Porto Rico being domestic, as distinguished from foreign, territory, and that therefore trade between New York and San Juan is coastwise trade, see Huus v. New York & P. R. S. S. Co. 182 U. S. 392, 45 L. ed. 1146, 21 Sup. Ct. Rep. 827.

"That the provisions of the national banking law are extended to Porto Rico, see 23 Ops. Atty. Gen. 169. The argument in this opinion is a particularly convincing one. That the trade-mark law was similarly extended, see 23 Ops. Atty. Gen. 634. That the waters of Porto Rico are waters of the United States within § 10 of the act of March 3, 1869, see 23 Ops. Atty. Gen. 551. Even the Philippine Islands are held to be within the exterior boundaries of the United States. 24 Ops. Atty. Gen. 120.

"The phrase 'within the exterior boundaries of the United States' was held to apply to the Indian territory, and the statute containing this phrase (§ 3448, Rev. Stat. U. S. Comp. Stat. 1901, p. 2277) was held to supersede a prior treaty with the Cherokee Nation of Indians. The Cherokee Tobacco (207 Half Pound Papers Smoking Tobacco v. United States), 11 Wall. 616, 20 L. ed. 227. From the dissenting opinion in this case (p. 624) it is evident that all of the members of the court admitted that Alaska was 'within the exterior boundaries of the United States.'

"Other statutes of the United States similarly held to have been extended to Porto Rico under § 14 of the organic act (supra) will be found in 24 Ops. Atty. Gen. 40, 55, 122 and 612.

"The coast of Alaska has been held to be the coast of the United States. The C. G. White, 12 C. C. A. 314, 29 U. S. App. 197, 64 Fed. 579; The Coquitlam, 23 C. C. A. 438, 48 U. S. App. 103, 77 Fed. 744. See also the opinion of this court in the case of Peck S. S. Line v. New York & P. R. S. S. Co., 2 Porto Rico Fed. Rep. 109."

From the references thus made it can be seen that the officers of the government and the Supreme Court of the United States have not hesitated to hold that statutes similarly worded to the one we are here considering are not locally inapplicable, and, therefore, under § 14 of the Foraker act, are in force as to Porto Rico. In the case of Peck S. S. Line v. New York & P. R. S. S. Co., supra, heretofore decided by this court, we used this language:

"It is a reasonable conception that when Congress, under its constitutional powers, enacts a general law seeking to remedy some widespread evil in the nation, and which evil exists in the territories equally with the states, if there is any language in the act itself denouncing the evil that makes it applicable to the territories, fine distinctions as to the meaning of the word 'territories' ought not to prevent the enforcement of the law in places where Congress has even ampler powers than it has in the states. Such acts being remedial in their nature, it was held in Southern P. R. Co. v. United States, 38 Fed. 55, and the rule is well established, that they should be liberally construed. And we think this is true to a reasonable extent, even when the new law denounces that as a crime which was not a crime before."

Referring again to the two decisions cited by counsel for defendant, the Ames and Whelpley Cases, supra, we decided to say that, while we think the ruling there carries the principle

United States v. Castro.

that penal statutes must be strictly construed to the utmost limit, still, without disagreeing with them, there is such a difference between carrying lottery tickets from a state to a territory, or *vice versa,* under the act in question, and bringing such tickets within the United States from abroad, that we need have no quarrel with the ruling there made.

Courts and lawyers often continue to accept the maxims of law as binding to an extent that, under certain circumstances in modern times, is unwarranted, when in fact such maxims are the results of conditions that existed during long periods of time, resulting in the complete acceptance of the doctrine,— conditions which have sometimes long since ceased to prevail. As illustrative of this idea, one of the best-considered cases we have been able to find is that of United States v. Lacher, 134 U. S. 624, 33 L. ed. 1080, 10 Sup. Ct. Rep. 625, where Mr. Chief Justice Fuller, when considering § 5467 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 3691) and the rule that penal statutes should be strictly construed, held that: "As contended on behalf of the defendant, there can be no constructive offenses, and before a man can be punished his case must be plainly and unmistakably within the statute. But, though penal laws are to be construed strictly, yet, the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the legislature. [Citing] United States v. Wiltberger, 5 Wheat. 76, 5 L. ed. 37; United States v. Morris, 14 Pet. 464, 10 L. ed. 543; American Fur Co. v. United States, 2 Pet. 358, 367, 7 L. ed. 450, 454." He then proceeds to quote from Mr. Justice Story in United States v. Winn, 3 Sumn. 209, Fed. Cas. No. 16,740, who held: "That the proper course in all these cases is to

search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature."

He further shows that Mr. Sedgwick, in his work on Constitutional Law, 2d ed. p. 282, states that: "The rule that statutes of this class are to be construed strictly is far from being a rigid or unbending one, or, rather, it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent."

He further shows in that same case, quoting from Maxwell on the Interpretation of Statutes, 2d ed. p. 318, that: "The rule which requires that penal and some other statutes shall be construed strictly was more rigorously applied in former times, when the number of capital offenses was 160 or more; when it was still punishable with death to cut down a cherry tree in an orchard, or to be seen for a month in the company of gypsies. But it has lost much of its force and importance in recent times, since it has become more and more generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning. . . . It was founded, however, on the tenderness of the law for the rights of individuals, and on the sound principle that it is for the legislature, not the court, to define a crime and ordain its punishment."

In United States v. O'Connor, 31 Fed. 449, it was held that: "To bring a given act within the inhibition of a statute, and render the same unlawful, it is not always essential that it should be particularly described and expressly prohibited. If such was the case, laws would either become too prolix, or fail, in

United States v. Castro.

a great measure, to accomplish the intent of the lawmaker. A statute often speaks as plainly by inference and by means of the purpose which underlies the enactment, as in any other manner; and whenever it appears by necessary inference from what is expressed, that a given act or acts are opposed to the policy of the law and will defeat its purpose, or the object had in view by the legislature, such acts should be held to be thereby prohibited."

The statute under consideration punishes three different offenses: First, causing lottery tickets to be brought into the United States from abroad; second, causing them to be carried in the mails of the United States; and, third, causing them to be carried from one state to another within the United States. Reilley v. United States, 46 C. C. A. 25, 106 Fed. 896.

The source of the power of Congress to create these offenses is obvious, and it would be well to keep in mind the fact that it has enacted this law creating these specific offenses. This shows its intention on the subject. The intention of Congress in enacting it can easily be gathered from its title, which is: "An Act for the Suppression of Lottery Traffic through National and Interstate Commerce and the Postal Service Subject to the Jurisdiction and Laws of the United States." [28 Stat. at L. 963, chap. 191, U. S. Comp. Stat. 1901, p. 3178.]

The commerce of the United States extends to, covers, and includes Porto Rico. So do the postal laws of the nation, and so do all the other general laws above specifically pointed out by the United States attorney. Under the provisions of the organic act, Porto Rico is made a customs district, and its ports of entry are open for the ships from foreign countries. Merchandise entering Porto Rico from foreign countries and paying the duty imposed by law is then within the United States, and is

United States v. Castro.

no longer subject to any other duty; hence, if lottery tickets can be brought into Porto Rico, and it is no crime under the law to transfer them from a territory or dependency to a state of the Union, then the very object of this statute is thwarted. There are other similar instances that might be cited in support of this view. We are aware, of course, that these considerations of inconvenience or consequences should not govern us, or induce us to hold that as a crime which the law has not said is a crime, and we only cite them as supporting our contention, that the statute does, in fact, include within its scope the prohibition of the act set out in the indictment. Whether or not the defendant brought the tickets to the island (if he in fact brought any) with intent to dispose of the same can only be determined from the evidence at the trial. On that we express no opinion.

Therefore, giving all the weight that ought to be given to the contention of counsel for defendant here, and to the rule that penal statutes must be strictly construed, we still feel that the bringing of lottery tickets from Cuba into Porto Rico is a bringing of them from abroad within the United States, within the meaning of the act in question, and therefore the demurrer should be overruled, and it is so ordered.