## UNITED STATES v. DI GENOVA.
### No. 8216.

Circuit Court of Appeals, Third Circuit.
Argued March 1, 1943.

Decided March 24, 1943.

---

William F. Quinlan, of Philadelphia, Pa. (A. Archer Cross, of Philadelphia, Pa., on the brief), for appellant.

Francis W. Sullivan, of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The defendant was tried in the district court for a violation of the provisions of Revised Statutes § 5209, as amended, 12 U.S.C.A. § 592. That statute provides, insofar as herein pertinent, that: "Any officer, director, agent, or employee of any * * * insured bank * * * who embezzles * * * any of the moneys, funds, or credits of such * * * insured bank, or * * * who makes any false entry in any book, report, or statement of such * * * insured bank, with intent in any case to injure or defraud such * * * insured bank * * * or to deceive any officer of such * * * insured bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such * * * insured bank * * *" shall be guilty of a misdemeanor.

The defendant was charged with having violated this statute in that he made false entries in the records of The Banca D'Italia and Trust Company of Philadelphia, Pennsylvania, with intent to deceive the officers of the bank.[1] The indictment did not charge an intent to deceive the Comptroller of the Currency, the Federal Deposit Insurance Corporation or any agent or examiner appointed to examine the affairs of the bank. The bank is a member of the Federal Deposit Insurance Corporation. The defendant was an officer and director of the bank. The issues tendered by the indictment were whether the entries were in fact false and whether the defendant intended to deceive the officers of the bank in the making of such entries.

The evidence was that the defendant's nephew, Alexander Vernacchio, carried an account in the bank under the assumed name, Salvatore Morso, that upon several occasions Vernacchio, using the alias Salvatore Morso, or Alexander Morso, made loans at the bank which were intended for the use of the defendant to whose credit the proceeds were transferred, and that the directors and officers of the bank, all members of the defendant's family, approved the loans with full knowledge of all these facts.

Such being the evidence, the trial judge charged the jury "When the loan went through the bank, the bank was solvent, and the bank was not injured, and it was admitted that the directors of the bank had no complaint to make at all—they were not deceived. That admission we must take as a fact. In fact, you must assume as a fact that the bank was not deceived, and if the board of directors knew about this then there was no intent to deceive the bank."

The trial judge thus instructed the jury that the evidence established as a fact that the officers had knowledge and were not deceived and that there was no intent

---

[1] Two counts of the indictment charged that the defendant embezzled bank funds. The government presented no evidence to support these counts and the trial court directed a verdict for the defendant as to them. They are, therefore, not involved in this appeal.

by the defendant to deceive the directors or the bank. Since this was the only issue as to intent tendered by the indictment, and since intent was a necessary element of the crime, it is obvious that the defendant's request for a directed verdict of not guilty should have been granted.

Instead of directing a verdict, however, the trial judge went on to charge: "Now, the question remains whether there was any intent to deceive the bank examiner. The law says that if you do it with intent to deceive the bank examiners or deceive the bank, it is a criminal offense. The question of deception of the directors of the bank and any injury to the bank is out, because the directors say that they knew all about it, and that has not been denied." This was followed by an extended discussion of the problems which confront bank examiners and the need for veracity of bank records. The trial judge then said: "Was this fictitious name used as a smoke screen to damage the bank and conceal some improper defalcation or wrongdoing on the part of the defendant? * * * It is upon that narrow question that I let the case go to the jury". Upon these instructions the jury found the defendant guilty.

Just what the issue was which the trial judge thus submitted to the jury is not entirely clear. It is apparent, however, that it involved a charge—deception of bank examiners—which had not been made against the defendant in the indictment upon which he was being tried. It was, therefore, not an issue in the case and deliberation by the jury upon it was wholly useless and inappropriate.

The record in this case compels one final observation. Since the trial judge properly concluded that the evidence could not sustain a finding that the defendant intended to deceive the officers of the bank it was clearly his duty in the exercise of his judicial function to direct a verdict for the defendant.[2] Instead he apparently sought to shift the responsibility for such a verdict to the jury for he said to them in his charge: "Members of the jury, what I am saying now, and I am weighing every word I say, and being very sensitive of your responsibilities, and because I am extremely sensitive of your responsibilities, because of that, I am letting you decide

this case. If I had been less sensitive I probably would have gone further and would have had to decide that, as a matter of legal requirement, there was no guilt in this man. But, there is enough in this case to make me feel easier in the discharge of my duty if I submitted this question to you, because you are twelve and I am only one." This refusal by the trial judge to assume his responsibility to declare the law applicable to the facts of the case was not merely an error which made possible a conviction where there was no evidence to support the charge but in addition was an abdication by the trial judge of his judicial function which this court may neither ignore nor condone.

The judgment of the district court is reversed and the cause is remanded for a new trial.

---

[2] France v. United States, 1896, 164 U. S. 676, 681, 17 S.Ct. 219, 41 L.Ed. 595; Mickle v. United States, 8 Cir., 1907, 157 F. 229; Duff v. United States, 4 Cir., 1911, 185 F. 101.