## UNITED STATES *v.* HALSETH.

No. 91.   Argued November 28, 1951.—Decided January 7, 1952.

*John R. Benney* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney, Beatrice Rosenberg* and *J. F. Bishop.*

*Horace J. Donnelly, Jr.* argued the cause for appellee. With him on the brief was *Bruno V. Bitker.*

MR. JUSTICE MINTON delivered the opinion of the Court.

Appellee was indicted on eight counts in the District Court for the Eastern District of Wisconsin for violation of § 213 of the Criminal Code of 1909, 35 Stat. 1129–1130, 18 U. S. C. § 336.   The District Court granted appellee's motion to dismiss the indictment, and the United States

278

appealed directly to this Court, pursuant to 18 U. S. C. (Supp. IV) § 3731. The pertinent provisions of the statute. upon which the indictment was based were as follows:

> "No letter, package, postal card, or circular concerning any lottery . . . or similar scheme offering prizes dependent in whole or in part upon lot or chance . . . shall be deposited in or carried by the mails . . . . Whoever shall knowingly deposit . . . anything to be . . . delivered by mail in violation of . . . this section . . . shall be fined . . . or imprisoned . . . ."

The first count of the indictment charged that:

> "Perry Halseth, knowingly, wilfully and unlawfully did cause to be delivered by mail to Miss Lucia Brown a circular letter concerning a lottery or scheme offering a prize dependent upon lot or chance . . . ."

The other counts were identical except as to the name of the addressee and the point of delivery.

For the purpose of the motion to dismiss, the parties stipulated as to particularity that a letter, a circular, an order blank, and a punchboard were sent to the addressee by mail. The letter subtly indicated how the addressee might obtain a radio free by selling the chances on the punchboard and how certain lucky numbers would reward the purchaser with prizes of a radio and three Rolpoint ball pens.[1] The punchboard contained an illustration of merchandise to be won. No merchandise was sent with the mailing. If the addressee desired to put the scheme into operation, the merchandise could be obtained by sending the full amount in cash, or by a down payment of

[1] Actually, four counts were based on material relating to radios and pens and four to cameras and a telescope; but since the nature of the mailings was the same, we consider only the material relating to radios and pens.

$2.00 with the order and the balance payable on delivery, or by a C. O. D. shipment. The punchboard also informed the addressee that merchandise could be "purchased" from appellee at any time.

The District Court held that even if these stipulated facts had been alleged in the indictment and accepted as true for the purpose of the motion to dismiss, still the indictment did not state an offense because the mailing did not concern an *existing* lottery or scheme to obtain prizes by lot or chance. The question therefore is whether the mailing of gambling paraphernalia that may be used to set up a lottery or similar scheme is a violation of the statute.

The statute on which the indictment is based was passed in 1909, and since that time no reported case has been found construing it. However, in cases construing analogous lottery statutes, old in our law, the courts have held that they apply only to existing lotteries or schemes.[2]

In *France* v. *United States,* 164 U. S. 676, a lottery had been conducted in Kentucky. After the drawing was over, persons who were interested in the outcome and who had taken money to the operators of the lottery for chances purchased were returning across the state line to Ohio; they had in their possession the official print of the lucky number that had been drawn, slips that corresponded with the lucky number, known as "hit slips," and money which was to be given to winners. They were arrested and charged with a conspiracy to violate a statute which prohibited the carrying across state lines of "any paper, certificate, or instrument purporting to be or represent a ticket, chance, share, or interest in or dependent upon the event of a lottery . . . ." (28 Stat. 963). In

---

[2] *France* v. *United States,* 164 U. S. 676; *Francis* v. *United States,* 188 U. S. 375; *United States* v. *Irvine,* 156 F. 376.

holding that the defendants had not violated the statute this Court said:

"The lottery had already been drawn; the papers carried by the messengers were not then dependent upon the event of any lottery. . . .

"There is no contradiction in the testimony, and the government admits and assumes that the drawing in regard to which these papers contained any information had already taken place in Kentucky, and it was the result of that drawing only that was on its way in the hands of messengers to the agents of the lottery in Cincinnati.

"The statute does not cover the transaction, and however reprehensible the acts of the plaintiffs in error may be thought to be, we cannot sustain a conviction on that ground. Although the objection is a narrow one, yet the statute being highly penal, rendering its violator liable to fine and imprisonment, we are compelled to construe it strictly. Full effect is given to the statute by holding that the language applies only to that kind of a paper which depends upon a lottery the drawing of which has not yet taken place, and which paper purports to be a certificate, etc., as described in the act. If it be urged that the act of these plaintiffs in error is within the reason of the statute, the answer must be that it is so far outside of its language that to include it within the statute would be to legislate and not to construe legislation." 164 U. S. at 682–683.

In the instant case, too, the statute is penal and must be strictly construed. We hold that the words "concerning any lottery" mean an existing, going lottery or gambling scheme. The mailing does not purport to concern any existing lottery, and neither the addressee nor the appellee was engaged in the operation of a lottery or

similar scheme. .The lottery or scheme would come into existence only if the addressee put the paraphernalia into operation. The mere mailing of information concerning such schemes and how they may be set up or the mailing of paraphernalia for such schemes does not violate the statute in question. In fact, the Post Office Department itself did not regard the statute as covering the activity complained of here. Beginning in 1915, the Department has sought to amend the statute without success.[3]

Congress has had before it many times the question of what gambling devices and paraphernalia it would exclude from the mails and interstate commerce,[4] and only recently has it passed an act concerning the subject. Act of January 2; 1951, P. L. No. 906, 64 Stat. 1134, 15 U. S. C. § 1171. If punchboards are to be added to the category of devices to be excluded, it is for Congress to make the addition.

The judgment is

*Affirmed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE BURTON dissent.

---

[3] Report of the Postmaster General 72 (1915).

[4] Hearings of April, May and June 1950, House Committee on Interstate and Foreign Commerce on S. 3357 and H. R. 6736, 81st Cong., 2d Sess. 259–260.