### UNITED STATES v. BIANCO.

#### No. 13148 Cr.

United States District Court
W. D. Pennsylvania.
March 31, 1952.

868

Edward C. Boyle, U. S. Atty., Irwin A. Swiss, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Premo J. Columbus, Pittsburgh, Pa., for defendant.

STEWART, District Judge.

Defendant was charged in six counts of violating Section 1301 of Title 18 of the United States Code, which reads as follows: "Whoever brings into the United States for the purpose of disposing of the same, or knowingly deposits with any express company or other common carrier for carriage, or carries in interstate or foreign commerce any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme; or knowingly takes or receives any such paper, certificate, instrument, advertisement, or list so brought, deposited, or transported, shall be fined not more than $1,000 or imprisoned not more than two years, or both."

At the trial of the case, the Court, relying on France v. United States, 1897, 164 U.S. 676, 17 S.Ct. 219, 41 L.Ed. 595, granted the defendant's motion for judgment of acquittal with respect to counts 1 and 2. The jury, on November 1, 1951, found the defendant guilty on the remaining four counts. Defendant has filed a motion in arrest of judgment under Rule 34 of the Federal Rules of Criminal Procedure, 18 U.S.C. following § 687 contending that the indictment does not state facts sufficient to constitute an offense against the United States. In addition, defendant has filed a motion for judgment of acquittal after verdict or in the alternative a motion for a new trial pursuant to Rule 29(b) assigning as reasons in support thereof that:

"1. The four Counts of the indictment upon which the case went to the jury, to-wit, Counts 3, 4, 5, and 6, allege no indictable offense against the United States.

"2. If the indictment shows an offense to have been committed against the United States, then the evidence was not sufficient to establish such violation.

"3. The Court erred in charging the jury and in refusing to charge the jury as requested.

"4. The verdict was against the law and the evidence."

The first reason in support of the motion for judgment of acquittal is the same as that asserted in support of the motion in arrest of judgment. The question of whether Counts 3, 4, 5 and 6 of the indictment charge indictable offenses against the United States is properly raised by the motion in arrest of judgment.

Rule 34 provides, in part, that: "The court shall arrest judgment if the indictment or information does not charge an offense * * *".

Little need be said concerning this aspect of the case. It is apparent that each of the remaining counts does charge an offense against the United States, namely, a violation of Section 1301 of Title 18 of the United States Code, quoted supra. Requiring closer examination is the question of the sufficiency of the evidence to sustain the conviction. This question is properly raised by the motion for judgment of acquittal.

Although variously stated by defendant, essentially he asserts three specific grounds in support of the motion for judgment of acquittal. They are as follows:

(1) Intent, i. e, bad purpose or evil motive has not been sufficiently proved.

(2) The evidence is insufficient to prove that the advertisement and prize lists were carried in interstate commerce.

(3) The evidence is insufficient to prove that the advertisement and prize lists related to existing lotteries.

## I.

Defendant argues that intent is an element of the crime charged and that it has not been sufficiently proved by the Government. The law relating to intent in federal offenses has been summarized recently by the Supreme Court of the United States in Morissette v. United States, 1952, 342 U.S. 246, 72 S.Ct. 240. The opinion by Mr. Justice Jackson does not attempt to draw a precise line or set forth comprehensive criteria for distinguishing between crimes that require a "mental element" and crimes that do not. Rather a difference in approach for construing federal statutes which create offenses new to the law as distinguished from statutes adopting offense already well defined at common law is set forth. Mr. Justice Jackson, speaking for the majority, summarized this distinction as follows, 342 U.S. at page 262, 72 S.Ct. at page 249: "Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act."

Section 1301 of Title 18 of the United State Code is derived from Chapter 191 of the Act of March 2, 1895 and the offense here charged was one new to the law when the Act of 1895 was passed. It was not a common law crime. Therefore, we must look to the language of the statute to determine whether any mental element is included in the offense charged. Section 1301 contains nothing which requires a showing of evil intent or bad purpose. It does, however, contain a requirement, with respect to certain of the offenses at least, that the defendant have a knowledge of facts constituting the offense charged. One is guilty of an offense under this section who "*knowingly* deposits with any express company or other common carrier for carriage, or carries in interstate or foreign commerce any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme; * * *." (Emphasis added.) We note in passing that a permissible construction (perhaps the most justified, gramatically) is that "knowingly" does not apply to the offense of carrying lottery tickets, etc. in interstate commerce which is here charged. We shall assume, however, that "knowingly" applies to carrying as well as to depositing for carriage. The term "knowingly" contains no element of evil purpose but imports a perception of the facts requisite to make up the crime. Commonwealth v. McKnight, 1933, 283 Mass. 35, 186 N.E. 42. Accordingly, proof of knowledge on the part of the defendant that the items transported were lists of prizes drawn or awarded by means of a lottery, gift enterprise or similar scheme, and proof that the defendant knew he was carrying these items when he traveled in interstate commerce were essential. The evidence in this case was sufficient to sustain findings by the jury as to both. A similar construction of the term "knowingly" in a statute relating to the mailing of lottery circulars, etc. was made in United States v. Politzer, D.C., 1893, 59 F. 273.

Nevertheless, we instructed the jury, pursuant to defendant's request, that criminal intent was a necessary element of the crime which the Government must prove, and that, in determining the intent of the defendant, they should consider all of the circumstances surrounding the acts of the defendant and the circumstances under which the sequence of events took place. Since the jury returned a verdict of guilty, we must assume that they found that criminal intent did exist. Assuming, then, that criminal intent is a necessary element of the crime charged, is the verdict of the jury in this regard supported by the evidence? In our opinion the evidence is sufficient to support a finding of criminal intent. There was evidence that the defendant started to leave the airport without picking up his luggage (Transcript, p.

10). Government Exhibit 6, a list of prizes awarded, pertained to the "Champion Sweepstakes" and was found in a bag of lottery tickets inside the luggage (Transcript, p. 12). Government Exhibits 3, 4, and 5 were found on the person of the defendant (Transcript, pp. 11, 12). These circumstances supported a finding of a criminal intent—an intention to violate the particular section. Indeed, a conclusion of an innocent intent under these circumstances would have been naive to say the least.

## II.

Defendant's second proposition involves the question of whether the transporting of lottery prize lists and advertisements from one state to another on the person and in the baggage of a passenger on a common carrier constitutes a carrying in interstate commerce. Defendant does not state the question in this manner, however, but adopts the language of Mr. Justice Holmes in Francis v. United States, 1903, 188 U.S. 375, at page 377, 23 S.Ct. 334, at page 335, 47 L.Ed. 508: "Therefore the question is suggested whether the carriage of a paper of any sort by its owner or the owner's servant, properly so called, with no view of a later change of possession, can be commerce, even when the carriage is in aid of some business or traffic."

The difficulty is that the facts in this case differ materially from the facts in Francis v. United States, supra. In the Francis case, the lottery slips were carried on foot across an interstate bridge while in this case the defendant was a passenger on an interstate common carrier.

Government exhibits 1 and 6 were contained in the defendant's luggage. Government exhibits 2, 3, 4 and 5 were carried in his wallet which was in his coat. We see no sound basis for distinction between the items in the baggage and the items in the wallet. We think that all these exhibits were carried by an independent carrier. We have made this observation for the reason that Mr. Justice Holmes states, 188 U.S. at page 377, 23 S.Ct. at page 335, that the Francis case is different

"from one where, the carriage being done by an independent carrier, it is commerce merely by reason of the business of carriage."

But even if we regard the carrying as having been performed by the defendant, Bianco, rather than by Capital Airlines, it would none the less constitute violation of this section. On the same day that the opinion in the Francis case was handed down, the Lottery Case, 1903, 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492 was also decided.[1] The majority opinion in this latter case was written by Mr. Justice Harlan, and he summarizes the holding of that case in his dissenting opinion in the Francis case, 188 U.S. at page 383, 23 S.Ct. at page 337, as follows: "In Champion v. Ames, 188 U.S. 321, ante, 23 S.Ct. 321, it has been held that lottery tickets were subjects of traffic among those who choose to sell or buy them; that the carriage of such tickets by independent carriers from one state to another was therefore interstate commerce; that under its power to regulate commerce among the several states, Congress—subject to the limitations imposed by the Constitution upon the powers granted by it—has plenary authority over such commerce, and may prohibit the carriage of such tickets from state to state; and that legislation to that end and of that character is not inconsistent with any limitation or restriction imposed by the Constitution upon the exercise of the powers granted to Congress."

In the Francis case, Mr. Justice Harlan, disagreeing with the majority on their ground for disposition of the case, proceeded to discuss the question which went unanswered in the majority opinion. After posing the question of whether the carrying of lottery tickets from one state to another by an individual is interstate commerce, Mr. Justice Harlan, continues, 188 U.S. at page 383, 23 S.Ct. at page 337, as follows:

"But is it true that the 'commerce among the several states,' which Congress has the power to regulate, cannot be carried on by an individual, or by a combination of individuals? We think not. In Paul v.

1. Docket title—Champion v. Ames.

Virginia, 8 Wall. 168, 183, 19 L.Ed. 357, 361, the court, referring to the grant to Congress of power to regulate commerce among the several states, said: 'The language of the grant makes no reference to the instrumentalities by which commerce may be carried on; it is general and includes alike commerce by individuals, partnerships, associations, and corporations.' In Welton v. State of Missouri, 91 U.S. 275, 280, 23 L.Ed. 347, 349, it was said that the power to regulate commerce embraces 'all the instruments by which such commerce may be conducted.' That the commerce clause of the Constitution embraces alike commerce by individuals, partnerships, associations, and corporations was recognized in Pensacolo Tel. Co. v. Western Union Tel. Co., 96 U.S. 1, 21, 24 L.Ed. 708, 715. And in Gloucester Ferry Co. v. [Commonwealth of] Pennsylvania, 114 U.S. 196, 205, 5 S.Ct. 826, 828, 29 L.Ed. 158, 162, the court said that commerce among the states 'includes commerce by whomsoever conducted, whether by individuals or by corporations.'

"In Champion v. Ames the carrying of lottery tickets happened to be by an incorporated express company. But if it had been by an express company organized as a partnership or joint-stock company the result of the decision could not have been different. In this case, if the carrying had been by an ordinary express wagon, owned by a private person, but employed by the accused and other conspirators to carry the lottery papers in question from Kentucky to Ohio, surely the carrying in that mode would be commerce within the meaning of the Constitution. It cannot be any less commerce because the carrying was by an individual who, in conspiracy or co-operation with others, caused the carrying to be done in violation of the act of Congress."

We agree with the above analysis of Mr. Justice Harlan. The language of Mr. Justice Holmes in the Francis case quoted above and relied on by the defendant is not a holding to the contrary since the majority decided that case on an entirely different ground. We would, however, hold

that that language is inapplicable for the reasons already stated.

## III.

A consideration of the scope of the decision of the Supreme Court in France v. United States, supra, is necessary in passing on defendant's third contention. Defendant argues that all of the lottery tickets, advertisements, and prize lists involved in this case relate to lotteries which had already been held; and that the decision in the France case requires that the lottery tickets, advertisements, and prize lists relate to a future lottery in order to sustain a conviction for their carriage in interstate commerce.

In the France case [164 U.S. 676, 17 S.Ct. 220], the Supreme Court of the United States held that the defendants had not violated Chapter 191 of the Act of March 2, 1895, 28 Stat. 963, which prohibited the carriage "from one state to another in the United States, any paper, certificate or instrument purporting to be or represent a ticket, chance, share or interest in or dependant upon the event of a lottery, so-called gift concert, or similar enterprise, offering prizes dependent upon lot or chance, or shall cause any advertisement of such lottery, so-called gift concert or similar enterprise, offering prizes dependent upon lot or chance, to be brought into the United States, or deposited in or carried by the mails of the United States, or transferred from one state to another in the same". The Court said, 164 U.S. at page 682, 17 S.Ct. at page 221:

"The lottery had already been drawn. The papers carried by the messengers were not then dependent upon the event of any lottery. The language as used in the statute looks to the future. The papers must purport to be or represent an existing chance or interest, which is dependent upon the event of a future drawing of the lottery. * * * If the lottery has been drawn, the interest is no longer dependent upon it. The condition upon which the bet or the interest was dependent has happened; the solution of the problem has already been

arrived at; the bet has already been determined. * * *

* * * * * *

"The statute does not cover the transaction, and, however reprehensible the acts of the plaintiffs in error may be thought to be, we cannot sustain a conviction on that ground. Although the objection is a narrow one, yet, the statute being highly penal, rendering its violator liable to fine and imprisonment, we are compelled to construe it strictly. * * * If it be urged that the act of these plaintiffs in error is within the reason of the statute, the answer must be that it is so far outside of its language that to include it within the statute would be to legislate, and not to construe legislation."

Section 1301 of Title 18 of the United States Code under which the defendant in this case was convicted was based on Title 18, United States Code, 1940 ed., § 387, which was in turn derived from Section 1, Chap. 191 of the Act of March 2, 1895, the section involved in the France case. However, the Act of March 4, 1909, Chapter 321, § 237, being § 387 of Title 18 of the United States Code, 1940 edition, was different in content from the Act of 1895 from which it was derived in that the Act of 1909 included in the list of items whose carriage in interstate commerce was prohibited any "list of the prizes *drawn* or *awarded* by means of, any such lottery, gift enterprise, or similar scheme" (emphasis added). The Act of 1895 contained no reference to list of prizes drawn or awarded. However, the present section for violation of which the defendant was tried does contain a provision similar to that in the Act of 1909.

In a very recent case, the Supreme Court of the United States, citing France v. United States, supra, held that the words "concerning any lottery" contained in § 213 of the Criminal Code of 1909, 18 U.S.C. (1940 ed.) § 336 mean an existing going lottery or gambling scheme. United States v. Halseth, 1952, 342 U.S. 277, 72 S.Ct. 275. The Court recognized that the statute involved was penal and must be strictly construed.

█ This statute must be strictly construed also. We can find no reported case construing this statute with respect to lists of prizes drawn or awarded. At the trial of the case, upon the authority of the France case, we granted defendant's motion for judgment of acquittal on counts 1 and 2, the counts involving the interstate carriage of tickets dependent on a lottery. We refused the motion with respect to the advertisement and lists of prizes. However, we have concluded that the judgment of acquittal must be granted on the count involving the interstate carriage of advertisements since the Act of 1895 contained a provision relating to advertisements and since the language of the France case seems broad enough to cover advertisements. At page 683, of 164 U.S., at page 222 of 17 S.Ct., the court says that "Full effect is given to the statute by holding that the language applies only to that kind of a paper which depends upon a lottery the drawing of which has not yet taken place, and which paper purports to be a certificate, etc., as described in the act."

Count 3 relates to the interstate carriage of an advertisement and a judgment of acquittal will be entered on that count.

█ Counts 4, 5 and 6 relate to the interstate carriage of lists of prizes awarded, and in our opinion the conviction on these counts must be sustained. The pertinent language of § 1301 is as follows: "Whoever * * * carries in interstate * * commerce any * * * list of the prizes *drawn or awarded* by means of, any such lottery, gift enterprise, or similar scheme * * * shall be fined * * *." (Emphasis added.)

The terms "drawn or awarded" are in the past tense, and contemplate that the drawing or event upon which the lottery depends has already happened. Defendant, in effect, asks us to preface these words with the words "to be" making this portion of Section 1301 read "list of the prizes drawn or awarded". This, and here we adopt the language of the Supreme Court in the France case 164 U.S. at page 683, 17 S.Ct. at page 222, would be "so far outside of its language that to include it within the statute would be to legislate, and not to construe legislation". For this reason and the further one that this provision was not included in the Act of 1895 but was new

to the Act of 1909, we conclude that the conviction on the counts relating to the interstate carriage of lists of prizes awarded must be sustained.

Defendant's motion for judgment of acquittal will be granted with respect to count 3, but will be denied with respect to counts 4, 5 and 6.

Defendant's alternate motion for a new trial must be denied also since there is nothing asserted by defendant that would require the granting of a new trial. Our discussion relating to defendant's motion for a judgment of acquittal is equally applicable to his motion for a new trial and supports a denial of that motion.