## HARVEY v. UNITED STATES.
### No. 11227.

United States Court of Appeals
District of Columbia Circuit.

Submitted April 7, 1952.

Decided May 22, 1952.

1. 53 Stat. 1100 (1939), D.C.Code 1940, § 47–1529(a).

T. Emmett McKenzie and James K. Hughes, Washington, D. C., submitted on the brief for appellant.

Charles M. Irelan, U. S. Atty., and Joseph M. Howard and Grace B. Stiles, Asst. U. S. Attys, Washington, D. C., submitted on the brief for appellee. George Morris Fay, U. S. Atty. at the time the record was filed, Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from a judgment of conviction by the United States District Court for the District of Columbia in a criminal case. An indictment in five counts was returned against this appellant and another defendant. Appellant was charged in the first and fourth counts only. By direction of the court he was acquitted on the fourth count. A verdict of guilty was returned against him by the jury on the first count.

This first count of the indictment charged that the appellant, between March 3 and March 6, 1951, operated a lottery known as the numbers game in violation of the District of Columbia statute.[1]

The Government presented several witnesses. Two police officers testified. Their testimony was in substance that on March 6, 1951, they went with a search warrant to 608 O Street, Northwest, found the door to a room unlocked, entered, and found appellant seated at a table on which were quantities of numbers slips, some money, and an adding machine. He was writing in a "numbers book". Upon further search other numbers books were found on the premises, and numbers slips were found on his person. One officer said that in answer to a question appellant stated he turned his numbers over to a man whose name he did not know. One officer testified that while he was on the premises he answered the phone and took three bets. Another witness, one Cook, testified that from time to time he had made numbers bets with one John Haley, and that one day early in March he gave a numbers bet to Haley, who later in the day returned it saying that it had been placed too late. Cook testified he then went to see appellant Harvey in a room at 608 O Street, Northwest, related to him the circumstances, and asked him (Harvey) what he intended to do about the matter; and that Harvey replied he did not intend to do anything, that Haley had been out on the street "and came in there too late." Cook said Harvey at that time was sitting at a table before an adding machine and a pile of money.

Prior to the trial counsel for Harvey moved for the return to him of the numbers slips, numbers books, and other physical evidence seized at the time of the arrest, and for the suppression of that evidence. The motion was denied. Upon the trial these papers, etc., were offered in evidence by the prosecutor. Counsel for Harvey sought to cross-examine before receipt of the material in evidence. That request was denied. He requested an instruction that the jury might disregard the numbers slips, and he moved for a directed verdict of acquittal. All these actions of defense counsel were upon the ground that it was not shown that the numbers slips were "live" slips, i. e., related to an existing lottery rather than to one already completed.

Appellant bases his contention upon two cases, France v. United States[2] and Smith v. United States.[3] The France case involved a federal statute[4] which made illegal the interstate carriage of any paper "purporting to be or represent a ticket, chance, share, or interest in or dependent upon the event of a lottery". The Court

1. 31 Stat. 1330 (1901), as amended, D.C. Code § 22–1501 (1940).
2. 1897, 164 U.S. 676, 17 S.Ct. 219, 41 L.Ed. 595.
3. 1939, 70 App.D.C. 255, 105 F.2d 778.
4. Act of March 2, 1895, 28 Stat. 963.

held that carrying slips relating to a lottery already drawn did not violate that statute. The Court said: "The language as used in the statute looks to the future. The papers must purport to be or represent an existing chance or interest which is dependent upon the event of a future drawing of the lottery."[5]

The Smith case in this court was concerned with a District of Columbia statute[6] which made it unlawful to be in possession of certain writings or slips "used, or to be used, * * * for the purpose of playing, carrying on, or conducting any lottery". We said in the course of an opinion, in which, however, we affirmed the conviction, that we were "not disposed to hold that a dead or expired lottery ticket would satisfy the statute." Upon motion for modification of the opinion, we expressly reserved the question as to the "dead" slips.

The recent decision and opinion of the Supreme Court in United States v. Halseth[7] deal with a similar problem. A federal statute[8] makes unlawful the mailing of any letter, etc., "concerning any lottery", etc. The defendant had mailed papers, etc., describing how the recipient might put into operation a lottery. The Court held that the quoted words "mean an existing, going lottery or gambling scheme" and affirmed a judgment dismissing the indictment.

The statute before us in the case at bar makes it unlawful to keep, set up, or promote a lottery.[9] The charge may contemplate an act already complete when the officer arrives. So the possession of numbers slips, whether expired or not, may well be relevant and material evidence that the possessor has been conducting a lottery. He need not be "caught in the act". He may be caught with damaging evidence of a completed offense. We think the evidence was properly admitted upon the charge of the first count. Other evidence was also received, as we have noted, and we think the total was ample to require submission to the jury.

This case differs from the cases cited and discussed above. The difference is a point of time. In those cases the charge was that the accused at a certain time was in possession of slips, or transported slips, or mailed slips. The nature of the slips at that time was the controlling feature of the cases. In the case at bar the charge was that Harvey had been operating a lottery at a time prior to the arrival of the officers. The difference is well illustrated by the different dispositions of the two counts in the present case. The fourth count was that Harvey was in possession of numbers slips at the time the officers walked in. The trial court held that to

5. Supra note 2, 164 U.S. at p. 682, 17 S.Ct. at page 221.

6. 52 Stat. 198 (1938), D.C.Code § 22–1502 (1940).

7. 1952, 342 U.S. 277, 72 S.Ct. 275.

8. Sec. 213 of the Criminal Code of 1909, 35 Stat. 1129, 18 U.S.C. § 336 (1946) [1948 Revised Criminal Code, 18 U.S. C.A. § 1302].

9. "If any person shall within the District keep, set up, or promote, or be concerned as owner, agent, or clerk, or in any other manner, in managing, carrying on, promoting, or advertising, directly or indirectly, any policy lottery, policy shop, or any lottery, or shall sell or transfer any chance, right, or interest, tangible or intangible, in any policy lottery, or any lottery or shall sell or transfer any ticket, certificate, bill, token, or other device, purporting or intended to guarantee or assure to any person or entitle him to a

chance of drawing or obtaining a prize to be drawn in any lottery, or in a game or device commonly known as policy lottery or policy or shall, for himself or another person, sell or transfer, or have in his possession for the purpose of sale or transfer, a chance or ticket in or share of a ticket in any lottery or any such bill, certificate, token, or other device, he shall be fined upon conviction of each said offense not more than $1,000 or be imprisoned not more than three years, or both. The possession of any copy or record of any such chance, right, or interest, or of any such ticket, certificate, bill, token, or other device shall be prima-facie evidence that the possessor of such copy or record did, at the time and place of such possession, keep, set up, or promote, or was at such time and place concerned as owner, agent, or clerk, or otherwise in managing, carrying on, promoting, or advertising a policy lottery, policy shop, or lottery." Supra note 1.

sustain conviction on that count those slips must be "live" slips at the time illegal possession was alleged. There being no evidence that they were "live", the court directed acquittal. That action of the court is not before us, and we intimate no opinion as to its necessity or validity. But the first count was that in the period March 3rd to March 6th Harvey operated a lottery. The trial court correctly held that the presence of the slips, whether "live" or expired, in addition to the other evidence, was sufficient foundation for a reasonable inference that Harvey had been, if indeed he was not then, engaged in operating a lottery.

Affirmed.