UNITED STATES of America

v.

**Morris A. LEWIS, Robert H. Ellis, Charles DeWitt Davis, Charles E. Berry, Theodore F. Hawkins, Beverly Broadus, Joseph Henson, Defendants.**

**No. 1146-58.**

United States District Court District of Columbia.

March 11, 1959.

Joseph A. Lowther, Asst. U. S. Atty., Washington, D. C., for the United States.

Harry J. Ahern, Washington, D. C., for Lewis.

Henry Lincoln Johnson, Jr., Washington, D. C., for Ellis.

William B. Bryant, Washington, D. C., for Davis and Berry.

Wilbur W. Sewell, Washington, D. C., for Hawkins.

T. Emmett McKenzie, Washington, D. C., for Broadus and Henson.

YOUNGDAHL, District Judge.

On December 8, 1958, an indictment was returned by the grand jury, charging in part:

"Continuously during the period from about September 18, 1958 to about October 1, 1958, within the District of Columbia, Morris A. Lewis, Robert H. Ellis, Charles DeWitt Davis, Charles E. Berry, Theodore F. Hawkins, Beverly Broadus and Joseph Henson knowingly were concerned as owners, agents and clerks, and in other ways, in managing, carrying on and promoting a lottery known as the numbers game.

"Second Count:

"On or about October 1, 1958, within the District of Columbia, Morris A. Lewis, Robert H. Ellis, Charles DeWitt Davis, Charles E. Berry and Theodore F. Hawkins knowingly had in their possession and under their control notations, records, receipts, tickets, certificates, bills, slips, tokens, papers and writings, current and not current, used and to be used in a lottery known as the numbers game. * * *"

Defendants Lewis and Davis were found guilty as indicated by the jury. Defendants Ellis and Berry were given judgments of acquittal on count two and were found guilty by the jury on count one. Defendant Broadus was found not guilty. Defendants Hawkins and Henson were given judgments of acquittal on the indictment.

All four convicted defendants have filed motions for judgment of acquittal n.o.v. or for a new trial.

The evidence at the trial concerning these four defendants showed that between September 18, 1958 and October 1, 1958, officers of the Metropolitan Police Force observed Davis, Berry and Ellis, on several occasions. The observations gave the officers probable cause to believe that these men were engaged in the numbers business and that the house at 4923 Just Street, N. E., was being used in the operation of a lottery in violation of D.C.Code, § 22–1501 and § 22–1505. On October 1, 1958, the police obtained a search warrant from the United States Commissioner for 4923 Just Street, N. E. At about 4:55 P.M., four police officers approached the front door of the house and two police officers approached the rear door. One of the four officers knocked several times on the front door, heard voices on the inside in close proximity to the front door, announced that they were the police and had a search warrant for the premises.[1] When no reply was forthcoming, and after waiting a brief period of time,[2] a police officer began to strike the door about the lock with a sledge hammer. The door was then opened by defendant

Lewis and the police officers entered. At about the same time, the two officers at the rear of the house entered through the back door accompanied by defendant Lewis' wife. Lewis then told his wife that "this is a police raid", and admitted to the police that he was running a numbers business and that the equipment was "upstairs". When the police entered the upstairs front bedroom, they saw Ellis and Berry, two adding machines, numbers slips and numbers paraphernalia. A radio in the room was tuned to the Metropolitan Police Radio band. A wrist watch and revolver belonging to the defendant Lewis was found in the front bedroom. In addition, Lewis claimed possession of some of the money found in the room. Defendant Davis was found in the back bedroom and in answer to the question, "Is any of this money yours?" replied, "If it's numbers money, it's mine."

The articles found at the house were seized and over defendants' objections were admitted into evidence at the trial.

■ With regard to defendant Lewis' motion, the principal complaint is that the evidence seized at 4923 Just Street, N. E., was the result of an illegal search and seizure. Counsel for Lewis did not re-argue the validity of the execution of the search warrant; this issue was thoroughly explored on the defendants' motion for suppression of the evidence, which the Court heard and denied during the trial (in the absence of the jury).[3] Counsel now argues that the evidence should have been suppressed because the entry of the two officers

---

1. This announcement was made in as loud a voice as that used by the officer while he was testifying. The officer's testimonial voice could be heard throughout the courtroom and I find that it was such as to be audible to any person of normal hearing who was standing on the other side of the door or in any of the nearby rooms. And see footnote 4, infra.

2. The officers testified they waited between ten seconds and two minutes.

3. Defendants objected to the execution of the search warrant. Specifically, they

asserted that the police "broke" the front door without giving "notice of [their] authority and purpose" as required by 18 U.S.C. § 3109 (1952). Even if it is assumed that there was a "breaking" of the front door, it is my opinion that the police complied with § 3109. See the text at footnotes 1 and 2, supra. But there is no validity in the assumption; I accept the testimony of the police officers to the effect that the door was opened for them by defendant Lewis. There was no "breaking" and § 3109, therefore, is inapplicable.

through the rear door of the premises took place before the entry of the four officers through the front door. The argument is that these two officers were not entering pursuant to a search warrant; that they, therefore, were trespassers, which rendered the subsequent proceedings in the house illegal and tainted the evidence seized with inadmissibility. The Court rejects this argument as the evidence does not show that Lieutenant Foran entered the premises prior to the entry by the four officers through the front door. Lieutenant Foran testified that as he "hugged" the rear door, he heard a male voice inside the house say, "Go out the back door"; that the door then opened and Mrs. Lewis started out the door. Foran testified he told Mrs. Lewis they were the police and that they had a search warrant for the premises, and then escorted her back into the apartment, whereupon the other officers appeared "about the same time". There was, therefore, no "breaking" of the rear door nor an illegal entry.[4]

▆▆ With regard to defendant Davis, the argument seems to be exclusively the method employed by the police in approaching the house. One of the two officers testified at the trial that in approaching the rear of the house, they "hugged the building line". Counsel for Davis has termed this "commando tactics", and has criticized it. To just what legal point the criticism is directed is not clear. Police tactics are relevant in a court of law only where there is question of interference with some protected right of the citizen. Certainly the police need not apprise of their coming with brass bands blaring; their tactics are not material on any evidentiary question solely because they happen to be melodramatic.

▆▆ With reference to defendants Berry and Ellis, reliance is placed on France v. United States, 1897, 164 U.S. 676, 17 S.Ct. 219, 41 L.Ed. 595, and Francis v. United States, 1903, 188 U.S. 375, 23 S.Ct. 334, 47 L.Ed. 508. The contention is that Berry and Ellis cannot be found guilty on count one since there is no evidence of their possession of numbers slips and paraphernalia on October 1, 1958—indeed, they were given judgments of acquittal on count two of the indictment—and the evidence concerning numbers slips in their possession on days prior to October first is merely circumstantial.

While the evidence of possession may have been circumstantial, the evidence of violation of D.C.Code § 22–1501, as charged in count one, was sufficient to go to the jury. It is possible to be found guilty of violating § 22–1501 even though the Government does not prove possession of numbers slips. While possession gives rise to a presumption that the possessor has violated the statute, it does not follow that inability to prove possession precludes the Government from proving the violation by other evidence.[5] The observations made and tes-

---

4. Even if it is assumed that Lieutenant Foran entered by breaking the rear door and that his entry was prior to that of the officers at the front door, Foran's entry would, nevertheless, have been lawful since he entered pursuant to the search warrant. Notice of authority and purpose, as required by 18 U.S.C. § 3109, having been given by the officers at the front door, the breaking would not have been unlawful. To show that any possible breaking by Foran must have occurred *after* the persons inside the house were aware that the police were at the door armed with a search warrant, it is necessary only to point out that Foran heard, "Go out the back door", while he was on the outside of the house. Under the circumstances, and from the other testimony, it seems apparent that this comment was provoked by the notification given the occupants by the officers at the front door.

5. Cf. Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 ("But this statutory presumption does not reduce the offense to one of mere

tified to concerning these defendants, along with their presence (in the very room where the incriminating evidence was found) at 4923 Just Street, N. E., at the time it was entered and searched by the police, was, in my opinion, sufficient to make out a prima facie case. Cf. Wyche v. United States, 1951, 90 U.S. App.D.C. 67, 193 F.2d 703, certiorari denied 1952, 342 U.S. 943, 72 S.Ct. 556, 96 L.Ed. 702.

The France and Francis cases are clearly distinguishable. In those cases the statute involved was the Act of March 2, 1895, c. 191, 28 Stat. 963, which sought the suppression of lottery traffic through national and interstate commerce. Those cases held that tickets

relating to a lottery that already had been run did not fall within the language of the statute.[6] However, the cases interpreting the statute here involved, D.C.Code, § 22–1501, clearly hold that possession of "dead" or "hit" lottery tickets does fall within the statutory language raising the presumption of violation. Harvey v. United States, 1952, 91 U.S.App.D.C. 36, 197 F.2d 594; Shaw v. United States, 1953, 93 U.S.App.D.C. 90, 209 F.2d 298, certiorari denied 1954, 347 U.S. 905, 74 S.Ct. 430, 98 L.Ed. 1063; Clement v. United States, 1953, 93 U.S.App.D.C. 154, 208 F.2d 46.

The verdicts of guilty must stand. Motions denied.

possession or shift the burden of proof; it merely places on the accused, at a certain point, the burden of going forward with his defense." 353 U.S. at page 63, 77 S.Ct. at page 629). And in Aikens v. United States, 1956, 98 U.S.App.D.C. 66, 232 F.2d 66 the Court of Appeals clearly indicated that the violation can be proved without the presumption. "The operation count under § 22–1501 likewise must fail. That section provides that proof of possession establishes a prima facie case. Lacking that presumption, there was no evidence (such as proof that bets were written in the apartment) from which it could reasonably be inferred that Kingsbury operated a lot-

tery." Bazelon, J., at page 68 of 232 F. 2d.

**6.** The statute prohibited the traffic in interstate commerce of " * * * any paper, certificate, or instrument purporting to be or represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, so-called gift concert, or similar enterprise, offering prizes dependent upon lot or chance, or shall cause any advertisement of such lottery, so-called gift concert or similar enterprise, offering prizes dependent upon lot or chance * * *" 28 Stat. 963. (For the statute presently covering this offense, see 18 U.S.C. § 1301 [1952]).